DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} When Craig Shetterly was discharged by Wadsworth-Rittman Area Hospital Association, he sued the hospital for promissory estoppel, breach of contract, and intentional infliction of emotional distress. The hospital moved for summary judgment, arguing that Mr. Shetterly was an at-will employee. The trial court granted summary judgment to the hospital. Mr. Shetterly has appealed, arguing that genuine issues of material fact exist regarding whether: (1) the hospital was estopped from discharging him, (2) the hospital made representations that created an implied contract, and (3) his sudden discharge following 90 days of positive performance reviews constituted the type of severe and outrageous conduct required to support a claim for intentional infliction of emotional distress. This Court affirms because there are no genuine issues of material fact regarding any of Mr. Shetterly's claims against the hospital. *Page 2 
 BACKGROUND {¶ 2} Mr. Shetterly worked as the Administrative Director of Radiology for the Wadsworth-Rittman Area Hospital Association from May until October 2006. During that time, his superior did three written evaluations of his performance. Each of the evaluations included only "good" or "very good" ratings for each category and ended with a checkmark inside a box beside the word "RETAIN" as opposed to a box beside the word "TERMINATE." In any event, in early October, hospital officials terminated Mr. Shetterly's employment explaining that he was not a good fit.
 {¶ 3} The employment application Mr. Shetterly completed before he started work contained a notice, just above his signature, that, "I UNDERSTAND THAT ANY EMPLOYMENT IS NOT FOR A STATED PERIOD OF TIME AND MAY BE TERMINATED WITH OR WITHOUT CAUSE, AT ANY TIME, AT THE OPTION OF EITHER MYSELF OR MY EMPLOYER." Mr. Shetterly stipulated that the hospital's employee handbook contained a similar notice that it was "not an employment contract, expressed or implied." The notice continued, "Hospital employees are employees at will and either the employee or the hospital can terminate the employment relationship at any time and for any reason."
 {¶ 4} Although Mr. Shetterly admits that, during his time at the hospital, his superiors had addressed some concerns with him regarding his handling of various things, he had never been formally disciplined. According to Mr. Shetterly, he had consistently received high praise from his superiors so his firing came as a shock. In his opinion, the firing "was wrong morally [and] ethically" because the hospital had never disciplined him or warned him in any way before it fired him. *Page 3 
 SUMMARY JUDGMENT {¶ 5} Mr. Shetterly's sole assignment of error is that the trial court incorrectly granted summary judgment to the hospital because genuine issues of material fact exist regarding each of his claims against it. In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829
(1990).
 PROMISSORY ESTOPPEL {¶ 6} In Ohio, employment situations of no fixed duration are presumed to be at-will, making the employment relationship terminable by either the employer or the employee at any time for any reason that is not contrary to law. Mesek v. Roberts Commc'ns Inc., 9th Dist. No. 22968,2006-Ohio-3339, at ¶ 7. One exception to the employment-at-will doctrine is that an employer may be estopped from discharging an employee if the employer's representations or promises of continued employment induced reasonable reliance by the employee. Mers v. Dispatch Printing Co.,19 Ohio St. 3d 100, 104 (1985). "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."Kelly v. Georgia-Pacific Corp., 46 Ohio St. 3d 134, 139 (1989). This exception requires "specific representations" rather than "[g]eneral expressions of optimism or good will." Craddock v. Flood Co., 9th Dist. No. 23882, 2008-Ohio-112, at ¶ 8. "Standing alone, praise with respect to job performance and discussion of future career development will not modify the *Page 4 
employment-at-will relationship." Id. (quoting Helmick v. CincinnatiWord Processing Inc., 45 Ohio St. 3d 131, paragraph three of the syllabus (1989)).
 {¶ 7} As part of his sole assignment of error, Mr. Shetterly has argued that a genuine issue of material fact exists regarding whether the hospital is estopped from discharging him because he reasonably relied on its representations that "he could expect to be with the company for a long time." He has also argued that he reasonably relied on the fact that his "performance evaluations had always been positive."
 {¶ 8} In response, the hospital has argued that Mr. Shetterly did not testify that his supervisors ever promised him a job for any specific period of time. According to the hospital, Mr. Shetterly testified only that, "[Ms. Laughlin] assured [him] and reiterated that [he] was doing a very good job, that there would be no reason for them to get rid of [his] position." The hospital has argued that this representation, if made, is not specific and definite enough to support Mr. Shetterly's promissory estoppel claim. In addition, the hospital has argued that any reliance by Mr. Shetterly was not reasonable and that there is no evidence that his alleged reliance was detrimental to him.
 {¶ 9} Mr. Shetterly admitted that he did not have a written employment contract and that no superior ever made a verbal promise regarding a specific term of employment. He testified, however, that he "believe[d] there was an implied contract, verbal contract, through [his] conversations through the performance evaluations, through the retainability check marks and the constant praise. . . ." He explained that he had been concerned about the hospital's finances and whether his position might be eliminated to save money. According to Mr. Shetterly, his supervisor "assured [him] and reiterated that [he] was doing a very good job, that there would be no reason for them to get rid of my position." There is no allegation, however, *Page 5 
that the hospital eliminated the Administrative Director of Radiology position. It simply fired Mr. Shetterly. Although he argued in his brief in opposition to summary judgment that he "was told by [the hospital] that his employment was long-term and that he would only be terminated for just cause," Mr. Shetterly did not cite any evidence supporting this allegation and a review of the record has not revealed any.
 {¶ 10} If the moving party meets its summary judgment burden by identifying specific parts of the record that demonstrate that there are no issues of material fact regarding the essential elements of a claim, the nonmoving party bears a reciprocal burden of setting forth specific facts demonstrating that an issue of fact exists for trial. Dresher v.Burt, 75 Ohio St. 3d 280, 293 (1996); Civ. R. 56(E). In its motion for summary judgment, the hospital correctly pointed out that Mr. Shetterly testified only to receiving general job praise from his supervisors. He did not testify to any promise, verbal or otherwise, of employment for a specific period of time, nor did he say that anyone ever promised him he would only be discharged for cause. To the contrary, Mr. Shetterly admitted that both the employment application and employee handbook specifically warned that his employment was at-will and could be terminated without cause. Furthermore, he admitted that he did not "interpret [his supervisor's comments] as a promise," but took them as "a very strong reassurance and positive attitude" toward him and his work.
 {¶ 11} Job praise alone does not modify the employment-at-will relationship. Craddock v. Flood Co., 9th Dist. No. 23882, 2008-Ohio-112, at ¶ 8. Mr. Shetterly did not testify to any sufficiently specific representations to call into question whether the hospital "should have reasonably expected [them] to be relied upon by [Mr. Shetterly] and, if so, whether the expected action or forbearance actually resulted and was detrimental to [him]." Kelly v. Georgia-Pacific *Page 6 Corp., 46 Ohio St. 3d 134, 139 (1989). Thus, there is no genuine issue of material fact regarding whether the hospital was estopped from discharging him. To the extent that Mr. Shetterly's assignment of error dealt with his promissory estoppel claim, it is overruled.
 BREACH OF CONTRACT {¶ 12} The second exception to the employment at-will doctrine is an express or implied contract altering the terms for discharge. Mers v.Dispatch Printing Co., 19 Ohio St. 3d 100, 103 (1985). In order to prove the existence of an implied contract, a plaintiff "bears the heavy burden of demonstrating (1) assurances on the part of the employer that satisfactory work performance was connected to job security; (2) a subjective belief on the part of the employee that he could expect continued employment; and (3) indications that the employer shared the expectation of continued employment." Craddock v. Flood Co., 9th Dist. No. 23882, 2008-Ohio-112, at ¶ 7. "Whether a plaintiff proceeds under a theory of implied contract or promissory estoppel, . . . specific representations leading to an expectation of continued employment are essential." Id. at ¶ 8 (citing Wing v. Anchor Media Ltd. of Texas,59 Ohio St. 3d 108, paragraph two of the syllabus (1991)).
 {¶ 13} Mr. Shetterly has argued that the hospital altered his at-will employment situation by creating an implied employment contract with representations "that his employment was long-term and that he would only be terminated for just cause." In response, the hospital has argued that Mr. Shetterly was an at-will employee and nothing altered that situation at any time. It has argued that he has not provided evidence "of any definite terms or guarantees of continued employment for a specified period." According to the hospital, Mr. Shetterly's own testimony supports their position that there is no evidence of an express or implied employment contract. *Page 7 
 {¶ 14} As this Court noted above, Mr. Shetterly did not point to any evidence in the record that his supervisors ever told him that he could only be discharged for cause. Additionally, he did not testify or offer any other evidence that anyone promised him employment for a certain period of time. The general praise he reported receiving for his job performance does not create a genuine issue of material fact regarding the creation of an express or implied employment contract. SeeCraddock v. Flood Co., 9th Dist. No. 23882, 2008-Ohio-112, at ¶ 7. To the extent that his assignment of error deals with his breach of contract claim, it is overruled.
 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS {¶ 15} In order to prove a claim for intentional infliction of emotional distress, a plaintiff must prove that: "(1) [t]he defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and (4) the plaintiff suffered serious mental anguish of the nature no reasonable man could be expected to endure." Rigby v. Fallsway Equip. Co. Inc., 150 Ohio App. 3d 155,2002-Ohio-6120, at ¶ 48 (quoting Jones v. White, 9th Dist. No. 18109,1997 WL 669737 at *8 (Oct. 15, 1997)). The Ohio Supreme Court has described the outrageous behavior that supports this type of claim as requiring something beyond a "tortious or even criminal" intent to cause harm. Id. at ¶ 50 (quoting Yeager v. Local Union 20, 6 Ohio St. 3d 369, 374-75 (1983), abrogated on other grounds by Welling v. Weinfeld,113 Ohio St. 3d 464, 2007-Ohio-2451). It is not sufficient for a plaintiff to set forth facts tending to prove that the defendant's "conduct has been characterized by `malice,' or a degree of aggravation which *Page 8 
would entitle the plaintiff to punitive damages for another tort."Id. (quoting Yeager, 6 Ohio St. 3d at 374-75).
 {¶ 16} Mr. Shetterly has argued that there exists a genuine issue of material fact regarding whether his sudden discharge following 90 days of positive performance reviews constituted the type of severe and outrageous conduct required to support a claim for intentional infliction of emotional distress. In response, the hospital has argued that Mr. Shetterly is unable to point to any evidence supporting the elements of such a claim.
 {¶ 17} According to Mr. Shetterly, his discharge "came without any warning and caused [him] to experience loss of sleep, extreme nervousness and severe emotional distress." When asked during his deposition what the hospital did that rose to the level of outrageous behavior, Mr. Shetterly speculated that perhaps the hospital hired him with the intention of using him in the short term to implement unpopular changes for the department. Speculation is not evidence. Mr. Shetterly has not pointed to any evidence in the record creating a genuine issue of material fact regarding whether the hospital "intended to cause emotional distress, or knew or should have known [its] actions would result in serious emotional distress" or whether the hospital's "conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community." Rigby v. Fallsway Equip. Co. Inc., 150 Ohio App. 3d 155,2002-Ohio-6120, at ¶ 48 (quoting Jones v. White, 9th Dist. No. 18109,1997 WL 669737 at *8 (Oct. 15, 1997)). Therefore, Mr. Shetterly's assignment of error is overruled.
 CONCLUSION {¶ 18} Mr. Shetterly has not pointed to any evidence in the record that creates a genuine issue of material fact as to whether the hospital was estopped from discharging him, whether the *Page 9 
hospital made representations that created an implied contract, or whether the hospital's firing him constituted the type of severe and outrageous conduct required to support a claim for intentional infliction of emotional distress. Therefore, the trial court correctly granted Wadsworth-Rittman Hospital Association's motion for summary judgment on Mr. Shetterly's claims for promissory estoppel, breach of contract, and intentional infliction of emotional distress. The judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 CARR, P. J. MOORE, J. CONCUR *Page 1